# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

№ 17-CV-6383 (JFB)
_____

CARL RAYMOND,

Petitioner,

VERSUS

THE PEOPLE OF
THE STATE OF NEW YORK,

Respondent.

_____

**MEMORANDUM AND ORDER**
January 11, 2019
_____

JOSEPH F. BIANCO, District Judge:

Carl Raymond (hereinafter "petitioner" or "Raymond") petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction in New York State court. On January 18, 2013, petitioner pled guilty to Assault in the First Degree, in violation of New York Penal Law §120.10(1), a Class "B" felony. Petitioner was thereafter sentenced to a determinate sentence of imprisonment of seven years, with three years' post-release supervision.

In the instant habeas corpus action, petitioner challenges his conviction as unconstitutional on the following grounds: (1) he was denied effective assistance of counsel; (2) he lacked competency to take a plea; and (3) he is actually innocent. For the reasons discussed below, petitioner's request for a writ of habeas corpus is denied in its entirety.

I. BACKGROUND AND PROCEDURAL HISTORY

A. Background

The following facts are adduced from the instant petition and underlying record.

According to respondent, on or about November 1, 2009, in Hempstead, New York, petitioner was riding in the backseat of a rental car driven by petitioner's girlfriend and victim, Santelli. (Resp't Affidavit in

Opposition, ECF No. 7, at ¶ 5.)[1] A third individual named Hannah Matos (hereinafter "Matos") was riding in the front passenger seat. (*Id.*) After an argument between petitioner and the victim, petitioner, from the back seat of the car, reached over the driver's seat and choked the victim. (*Id.*) Petitioner then placed a knife to the victim's throat and demanded Matos get out of the vehicle. (*Id.*) Once Matos exited the vehicle, petitioner slashed the victim's face with a knife. (*Id.*) While trying to protect herself, the victim placed her hands over her face which resulted in numerous stab wounds to her hands. (*Id.*) Additionally, petitioner stabbed the victim deeply in her thigh. (*Id.*) The victim got out of the car and petitioner got into the driver's seat and drove away with the victim's purse, wallet and phone. (*Id.*) From outside the vehicle, Matos witnessed these events. (*Id.* at ¶ 6.) As a result of the attack, the victim suffered numerous slash and stab wounds to her face, hands, elbow, and right thigh which resulted in scarring and follow-on physical therapy. (*Id.*)

While the victim was being taken to the hospital, a Nassau County police detective interviewed Matos about petitioner's attack. (*Id.* at ¶ 7.) Matos identified the petitioner from a photo pack and recounted a version of events that was substantially similar to that recounted by the victim. (*Id.*) The petitioner, after the attack, sought treatment for his lacerated left pinky finger and then went to the Hempstead Police Department, where he filed a report claiming, among other things, that the victim had attacked him and sought to blame him by repeatedly stabbing herself. (*Id.* at ¶ 8.)

Petitioner was charged in an indictment with, *inter alia*, two counts of assault in the first degree, and two counts of assault in the second degree. (*Id.* ¶ 9.) After a competency exam and two commitments to the Mid-Hudson Psychiatric Facility, petitioner was found competent to stand trial. (*Id.* ¶ 10.)

On January 18, 2013, petitioner pled guilty in Nassau County Supreme Court, to Assault in the First Degree, a Class "B" felony. (P. at 6.)[2] At that plea proceeding, petitioner first stated that he had spoken to his lawyer about pleading guilty, and that petitioner was satisfied with his counsel's representation in the case. (*Id.* at 4.) As to the factual basis for the plea, petitioner acknowledged that he cut the victim in the ear with a sharp object, and that the cut extended down her cheek. (*Id.* at 5-6.) The court fully explained to petitioner the nature of the charges against him and of the rights he was waiving by pleading guilty, including his right to appeal. (*Id.* at 5-8.). The court confirmed that his waiver of the right to appeal was voluntary. (*Id.* at 8.). Petitioner was also advised by the court of the potential penalties that he faced, including the fact that the determinate sentence of imprisonment would be followed by a period of post-release supervision of three years. (*Id.* at 8-9.) The court then explained the conditions of that post-release supervision, with petitioner stating that he understood. (*Id.* at 9.) After confirming that petitioner had not been

---

[1] The Court uses the pagination assigned by the electronic case filing system.

[2] Numbers in parentheses preceded by "P." refer to pages in the January 18, 2013 transcript of petitioner's guilty plea proceeding. (ECF No. 7-3.) Numbers in parentheses preceded by "S." refer to the pages in the June 7, 2013 transcript of petitioner's sentencing proceeding. (ECF No. 7-4.) Numbers in parentheses preceded by "H." refer to pages in the September 10, 2010 transcript of petitioner's pre-trial hearing. (ECF No. 7-1.)

2

pressured in any way, the trial court accepted his plea. (*Id.* at 10.)

Petitioner was sentenced on June 7, 2013. (S. at 1.) Prior to sentencing petitioner, the court first inquired about petitioner's current competency issues to which petitioner's counsel responded, "There is no issue, that's correct. He's been found competent. We're not raising that." (*Id.* at 3.)

After defense counsel asserted (as a mitigating factor for sentencing) that petitioner had defensive wounds on his hand, the court asked whether petitioner's counsel had discussed with petitioner the issue of self-defense. (*Id.* at 4.) Petitioner's counsel said:

> Yes, I did. Absolutely. And, as well as the issues of the psychiatric defense and potential allegations of an affirmative defense of mental defect. We have gone through this. I had extensive conversations with him on it and based upon the evidence, the strength of the evidence as well, he's made a decision to enter a plea of guilty.

(*Id.*) After being offered the opportunity to be heard, petitioner declined. (*Id.* at 5.) Finally, the court sentenced petitioner to the bargained-for sentence of a determinate term of seven years' imprisonment with three years of post-release supervision. (*Id.*)

B. Procedural History

1. Direct Appeal

Petitioner appealed to the Second Department of the New York State Appellate Division on or about July 23, 2016 raising two claims of error: (1) petitioner's plea was involuntary because the trial court failed to inquire into his mental competency despite his two prior commitments to mental-health facilities; and (2) the court failed to inform petitioner of the post-release supervision component of his plea before he made factual admissions of guilt and waived his right to appeal. (ECF No. 7-5.) On August 13, 2016, petitioner moved for permission to file a *pro se* supplemental brief. (ECF No. 7-7.) The Second Department granted petitioner's request on November 17, 2016. (ECF No. 7-9.) However, petitioner never filed a *pro se* supplemental brief and, therefore, the Second Department recalled and vacated its decision granting petitioner permission to file on January 11, 2017. (ECF No. 7-10.) On May 3, 2017, the Second Department unanimously affirmed the trial court's judgment of conviction and sentence, finding petitioner's contentions were unpreserved and without merit. *People v. Raymond*, 51 N.Y.S.3d 428, (2d Dep't 2017). The New York Court of Appeals thereafter denied petitioner leave to appeal. *People v. Raymond*, 29 N.Y.3d 1094 (2017).

2. Section 440 Motions

On April 19, 2016, petitioner filed a *pro se* motion in Supreme Court, Nassau County to vacate his judgment of conviction under New York Civil Procedure Law ("CPL") §§ 440.10 and 440.20 ("Section 440"). (ECF 7-16.) In his motion, petitioner claimed the following: (1) his plea was invalid because the sentencing court failed to advise him of the post-release supervision; and (2) based on jail-time calculations, petitioner had not been credited with all the time he spent in Nassau County Correctional Center. (*Id* at 2.)

On June 16, 2016, the court denied petitioner's Section 440 motion, finding petitioner's first claim meritless because

3

"[d]uring the plea colloquy, the Court advised the defendant that the promised sentence included a term of three years' post-release supervision, explained in detail what post-release supervision involved; and ascertained that the defendant understood all of this." (ECF No. 7-17 at 1.) Further, petitioner's claim could not be "considered in a post-judgment motion in any event, since sufficient facts appear on the record to have permitted adequate review of the claim on direct appeal." (*Id.*) As to petitioner's second claim, the court held that jail-time calculation credit "is not a ground for either vacating judgment or setting aside sentence." (*Id.*)

On July 22, 2016, petitioner, *pro se*, moved to appeal from the denial of his Section 440 motion and further moved to consolidate the denial of the Section 440 motion into his direct appeal. (ECF No. 7-18.) Petitioner subsequently withdrew his motion to appeal his Section 440 motion. However, no decision or order regarding petitioner's withdrawal was entered and the Section 440 motion was never considered by the Second Department. (ECF No. 7 at 13-14.)

On September 14, 2016, petitioner filed a second *pro se* motion in Nassau County Supreme Court to vacate his conviction under CPL § 440.10. (ECF No. 7-23 at n.1.) In this motion, petitioner alleged his plea transcript was not accurate and "alludes to possible defenses, actual innocence, and his competency to plead guilty." (*Id.* at n. 2, 3.)

The trial court denied petitioner's second Section 440 motion on September 16, 2016, stating that petitioner "offers no support" that the transcript of his plea proceeding is not accurate, and, "more importantly, does not explain how any inaccuracy in the transcript implicates the validity of his plea." (*Id*. at 1.) The court further found that petitioner's references to possible defenses, actual innocence, and his competency to plead guilty "are not only unsupported, but entirely unexplained." (*Id.* at n. 2.)

On January 6, 2017, petitioner filed a third *pro se* Section 440 motion in Nassau County Supreme Court to vacate his judgment of conviction and for the assignment of counsel. (ECF No. 7-24.) In this motion, petitioner claimed a lack of competency to take a plea due to a severe mental health illness diagnosis and alleged current mental health issues. (*Id.* at 2.) Petitioner also stated that "[he] will be unable to prosecute this action unless permitted to do so as a poor person" due to his current mental health issues. (*Id*.)

On January 19, 2017, the court denied petitioner's third Section 440 motion, explaining the following:

> [T]he defendant's competency issues were well-known to the attorneys and the Court during the pendency of his case. His counsel considered raising a psychiatric defense, and the defendant was consequently examined for that purpose by a forensic psychiatrist. At one point, the defendant was found to be incompetent to proceed to trial and was committed to the State Commissioner of Mental Health for treatment. After treatment, he was found mentally competent by his mental-health treatment providers, and, after CPL art[.] 730 proceedings, was found fit to proceed by this Court. Just one week after that, he

4

pled guilty. And, of course, the Court was well aware of the defendant's mental-health history when it found his guilty plea to be knowing, intelligent, and voluntary.

(ECF No. 7-25 at 1-2.) The court further explained that, "[a]s to [petitioner's] claim that he is not sufficiently mentally competent now to litigate a CPL 440.10 motion, the Court notes that, since his conviction, the defendant has filed two CPL art. 440 motions and eight other post-judgment motions, all *pro se*. The most recent of these motions was filed only four months ago." (*Id.* at 2.) Moreover, the court emphasized, "[b]ased on his history of motion practice – and, indeed, on his current letter application for assigned counsel – the Court has no doubt that the defendant is capable of identifying and setting out any prospective CPL 440.10 claim in sufficient detail to permit the Court to evaluate it for the purpose of determining whether assignment of counsel is warranted." (*Id.*)

On February 10, 2017, petitioner, *pro se*, moved to appeal the denial of his third Section 440 motion. (ECF No. 7 at 15.) On June 16, 2017, the Second Department denied petitioner's motion as "neither appealable as of right nor by permission." (ECF No. 7-28.)

On September 23, 2017, petitioner filed a fourth *pro se* motion in Nassau County Supreme Court to vacate his judgment of conviction under CPL § 440.10. (ECF No.7-29.) Petitioner alleged that he lacked the mental competency to plead guilty and again alleged current mental health issues, while requesting assignment of counsel. (*Id.* at 2.)

The trial court denied petitioner's fourth Section 440 motion on October 2, 2017. (ECF No. 7-32.) The trial court found petitioner's motion for the assignment of counsel failed to establish that he was "not engaging in repetitious litigiousness of the same or specious issues." (*Id*. at 3.) As to petitioner's claim that he was not mentally competent to take a plea, this "was resolved in the trial court and on appeal." (*Id.*)

On October 27, 2017, petitioner filed a fifth *pro se* motion in Nassau County Supreme Court to vacate his judgment of conviction under CPL § 440.10. (ECF No. 7-30.) In his motion, petitioner alleged "by reason of mental disease or mental defect [petitioner] was incapable of understanding or participating in the proceedings." (*Id.* at 4.) Additionally, petitioner brought two new allegations for the first time. First, petitioner claimed that "the [j]udgment was procured by duress" as he "was lock[ed] in a cell for 22 hours a day for three years or more than 730 days", while also being starved for a "long period before taking the plea." (*Id.*) Second, petitioner claimed that he was denied the effective assistance of legal counsel because "[d]efense counsel lied to court about discussing [the] issue of self defense to defendant and was forced to take a plea." (*Id.*) Once again, petitioner requested the assignment for counsel to assist in the Section 440 motion. (*Id*. at 5.)

On December 7, 2017, the court denied petitioner's fifth Section 440 motion. (ECF No. 7-32.) The court stated that "defendant's application relating purportedly to him not being mentally fit to plead guilty was addressed both by this Court in its previous decision and by the Appellate Division on the appeal from judgment and found to be

5

meritless." (*Id.* at 1.) As to petitioner's claim that the judgment was procured by duress, the court stated that this "conclusory allegation, raised now for the first time, years after his plea, sentence, appeal, and prior CPL 440 application, is plainly an incredible attempt to find some reason to vacate his conviction." (*Id*. at 2.) With regards to petitioner's claim of ineffective assistance of counsel, the court stated, "On its face, the allegation is again conclusory, unsupported by any explanation of what the advice was, or by an affidavit of his attorney as to what the advice was or an explanation of why one could not be obtained." (*Id*.) The court further noted:

> [T]here is nothing in the plea and sentence record to support the allegation; on the contrary, the defendant's correction of the court during the plea colloquy that he only sliced his female victim from her ear to her cheek (which scared her) and no other place did not suggest coercion or self-defense."

(*Id*.) The court incorporated its October 2, 2017 decision, stating that "to the extent the same issues are raised they are denied for the same reasons as previously stated, as well as for the procedural default attending their unjustified repetition." (*Id*. at 1.)

3. Motion for a Writ of Error Coram Nobis

On May 6, 2017, petitioner, *pro se*, filed a writ of error coram nobis, arguing that his appellate counsel was ineffective for the following reasons: (1) counsel did not include "many of the issues [petitioner] instruct[ed] [his] appella[te] [counsel] to raise[,] like ineffective assistance of counsel;" (2) failing to "communicat[e]" and "return many of [petitioner's] phone calls and written correspondence;" and (3) choosing to raise "issues that [have not] me[t] the preservation requirement." (ECF No. 7-20.)

The Appellate Division, Second Department, denied petitioner's writ of error coram nobis, concluding petitioner "failed to establish that he was denied the effective assistance of appellate counsel." (ECF No. 7-22.)

4. The Instant Petition

On October 26, 2017, petitioner, *pro se*, moved before this Court for a writ of habeas corpus, under 28 U.S.C. § 2254, on the following grounds: (1) petitioner was denied effective assistance of counsel because (a) counsel failed to address the potential self-defense justification; (b) counsel failed to properly advise petitioner whether to take a plea or go to trial and (c) counsel refused to go to trial because he did not receive adequate compensation; and (2) petitioner lacked competency to take a plea. (Pet., ECF No. 1) Petitioner also sent a supplemental letter to the Court on December 15, 2017. (ECF No. 6.) In that letter, petitioner claimed that Matos, the passenger witness, had a "sharp object" which he observed prior to leaving the scene. (*Id.* at 1.) Petitioner also attached news articles and a Commonwealth of Pennsylvania opinion detailing a domestic violence incident involving an individual named "Matos," and asserts it is the same individual who was the witness in the instant case. (*Id.*) Petitioner does not specifically request the December 15, 2017 letter be considered as an addition to his habeas corpus petition. However, in an abundance of caution, this Court has fully considered this supplemental submission, which the Court liberally construes as a claim of actual

innocence. Respondent filed a memorandum of law opposing the petitioner's application on February 6, 2018, arguing petitioner's claims of ineffective assistance of counsel and actual innocence are unexhausted and that all his claims are meritless. (ECF No. 7.) Petitioner did not file a reply brief, but did submit another letter to the Court, dated October 10, 2018, arguing that there was falsification of evidence in the grand jury regarding his mental illness. (ECF No. 8.) The Court has fully considered the parties' submissions, as well as the underlying record.

## II. STANDARD OF REVIEW

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented by the State court proceedings.

28 U.S.C. § 2552. "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principles from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decisions applied clearly established federal law erroneously or incorrectly. Rather, that application must be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "'[s]ome increment of incorrectness beyond error is required … the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the

7

mark as to suggest judicial incompetence.'" *Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed feelings of fact and conclusions of law are reviewed *de novo.*'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

II. DISCUSSION

Petitioner argues that he is entitled to habeas relief on three grounds: (1) he was denied effective assistance of counsel; (2) he lacked competency to take a plea; and (3) he is actually innocent. (Pet. at 5-6; ECF No. 6.)

Respondent argues that petitioner's claims that he was denied effective assistance of counsel and that he is actually innocent are unexhausted and, in any event, without factual support and contrary to defendant's knowing and voluntary admissions at his plea proceeding. (ECF No. 7 at 20.) Additionally, respondent argues that petitioner's claim that he lacked competency to take a plea is meritless. (*Id.* at 21.)

As explained below, the Court concludes that petitioner's claims of ineffective assistant of counsel and actual innocence are unexhausted, and in any event, are without merit. The Court further concludes that, petitioner's claim that his guilty plea was not knowing, voluntary, or intelligent due to a lack of competency is also without merit.

A. Procedural Requirements

1. Exhaustion

As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the state." 28 U.S.C. § 2254(b)(1)(A). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida*, 549 U.S. 327, 333 (2007), petitioner must fairly present his federal constitutional claims to the highest state court having jurisdiction over them. *See Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 191 n. 3 (2d Cir. 1982) (en banc). Exhaustion of state remedies requires that a petitioner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct the alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (quotation marks omitted) (alternation in original)).

However, "it is not sufficient merely that the federal habeas applicant has been through the state courts." *Picard*, 404 U.S. at 275-76. On the contrary, to provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Duncan*, 513 U.S. at 365-66 (holding that if a habeas petitioner claims that a state court trial denied him a constitutional right, "he must say so, not only in federal court, but in state court.") "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997)). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to

8

rule on the claim." *Daye*, 696 F.2d at 191-92 (citing *Picard*, 404 U.S. at 276; *United States ex rel. Cleveland v. Casscles*, 479 F.2d 15, 19-20 (2d Cir. 1973)). To that end, "[t]he chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Id.* at 192 (footnote omitted).

2. Application

Petitioner raises three grounds to support his ineffective assistance of counsel claim: (1) that counsel failed to address the potential self-defense justification; (2) counsel failed to properly advise petitioner whether to take a plea or go to trial and (3) counsel refused to go to trial because he did not receive adequate compensation. (Pet. at 5.) Respondent argues that petitioner's claims of ineffective assistance of counsel and of actual innocence are unexhausted. The Court agrees.

Petitioner's claim of ineffective assistance of counsel is based on counsel's alleged failure to advise him of a self-defense justification. This rationale was first mentioned in his fifth Section 440 motion, dated October 27, 2017. (ECF No. 7-30.) The county court denied petitioner's claim because "[o]n its face, the allegation is again conclusory, unsupported by any explanation of what the advice was, or by an affidavit of his attorney as to what the advice was or an explanation of why one could not be obtained." (ECF No. 7-32.) Further, the court noted during the plea, "defendant's correction of the court … that he only sliced his female victim from ear to her cheek … did not suggest coercion or self-defense." (*Id.*) Petitioner did not seek leave to appeal from the denial of his fifth motion. Thus, petitioner did not "fairly present" this claim to the highest state court having jurisdiction. *See Galarza v. Keane*, 252 F.3d 630, 638 (2d Cir. 2001) (quoting *Daye*, 696 F.2d at 191 n. 3; *see also Safran v. Dep't of Corr. & Cmty. Supervision*, 12-CV-4160 (PKC), 2014 U.S. Dist. LEXIS 60228, at *24 (E.D.N.Y. Apr. 30, 2014) (failing to seek leave to appeal the denial of a Section 440 motion renders claim unexhausted.).

With regards to petitioner's remaining arguments concerning ineffective assistance of counsel and his claim of actual innocence, petitioner first mentions these issues in his petition for a writ of habeas corpus before this Court and, therefore, has failed to "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845; *see also Duncan*, 513 U.S. at 365-66; *Bowyer v. Griffen*, No. 13-CV-00164S(F), 2017 U.S. Dist. LEXIS 19525, at *26 (W.D.N.Y. Feb. 9, 2017) (failure to include actual innocence claim in applying for leave to appeal to Appellate Division from denial of Section 440 motion renders claim unexhausted.).

Petitioner has provided no explanation for his failure to properly exhaust these claims in state court and, therefore, they are deemed unexhausted. As such, petitioner's claims are barred from review by this Court.[3] However, in an abundance of caution, the Court proceeds to evaluate the merits of all of petitioner's claims and, for the reasons

---

[3] Even assuming *arguendo* that petitioner has now procedurally defaulted on these claims in state court by failing to raise them previously, he has not demonstrated "cause and prejudice," nor has he shown a fundamental miscarriage of justice (such as actual innocence) for the reasons discussed *infra*. *See Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006).

discussed below, finds each of them to be without merit.

B. The Merits

1. Ineffective Assistance of Trial Counsel

Notwithstanding that petitioner's ineffective counsel claim is unexhausted, the Court nonetheless proceeds to analyze the claim's merits. Petitioner argues that he was denied the effective assistance of trial counsel on the following grounds: (1) counsel failed to address the potential self-defense justification and lied to the court about same; (2) counsel failed to properly advise petitioner whether to take a plea or go to trial; and (3) counsel refused to go to trial because he did not receive adequate compensation. (Pet. at 5.) As set forth below, having reviewed the record, the Court concludes that petitioner has failed to demonstrate that his counsel was ineffective in any way.

a. Standard

Under the standard promulgated by *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694.

The first prong of the *Strickland* standard requires a showing that counsel's performance was deficient. However, "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F. 3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). The performance inquiry examines the reasonableness of trial counsel's actions under all circumstances, keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Id.* at 319 (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005) (O'Connor, J., concurring)). "In assessing performance, [a court] must apply a 'heavy measure of deference to counsel's judgments.'" *Id.* (quoting *Strickland*, 466 U.S. at 691); *see also Premo v. Moore*, 562 U.S. 115, 126 (2011) ("In applying and defining this standard substantial deference must be accorded to counsel's judgment."). "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 588 (citing *Strickland*, 466 U.S. at 690-91). Moreover, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* (quoting *Strickland*, 466 U.S. at 690-91).

The second prong focuses on prejudice to the petitioner. The petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, "reasonable probability" means that the errors were of a magnitude such that they "undermine[ ] confidence in the [proceeding's] outcome." *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "[T]he question

to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695). The party alleging ineffective assistance of counsel bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004). "In the context of a guilty plea, *Strickland*'s prejudice prong requires a defendant to demonstrate a reasonable probability that, 'but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Munson v. Rock*, 507 F. App'x. 53, 56 (2d Cir. 2013) (quoting *Hill*, 474 U.S. at 59).

In the context of a guilty plea, in order to satisfy the "prejudice" prong, "the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

"In evaluating the prejudice suffered by a petitioner as a result of counsel's deficient performance, the court looks to the 'cumulative weight of error' in order to determine whether the prejudice 'reache[s] the constitutional threshold.'" *Sommerville v. Conway*, 281 F. Supp. 2d 515, 519 (E.D.N.Y. 2003) (quoting *Lindstadt v. Keane*, 239 F.3d 191, 202 (2d. Cir. 2001)). "In cases where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the defendant will have to show 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Missouri v. Frye*, 566 U.S. 134, 148 (2012) (quoting *Hill* 474 U.S. at 59).

b. Application

As noted, petitioner asserts that his counsel failed to inform him about the self-defense justification defense and was not truthful. (Pet. at 5.) However, petitioner supplies no support for this conclusory assertion, and the record is contrary to this claim. (*Id.*) In particular, during the sentencing, the court asked petitioner's trial counsel whether he had discussed the defense of self-justification and counsel responded, "I had *extensive* conversations with him on [the self-defense justification, psychiatric defense and affirmative defense of mental defect] and based upon the evidence, the strength of the evidence as well, he's made a decision to enter a plea of guilty." (S. at 4.) (emphasis added.) Petitioner did not contradict this statement on the record by counsel, and there is no basis in the record to conclude that his counsel was not truthful in making this statement to the court. (*Id.*) Therefore, this claim fails to satisfy the first prong of *Strickland*.

Petitioner additionally contends that his counsel was deficient for failing to properly advise him whether to take a plea or go to trial. (Pet. at 5.) However, based upon the record before this Court, it was not objectively unreasonable for petitioner's trial counsel to advise petitioner to plead guilty to first degree assault instead of going to trial. If petitioner had gone to trial and been convicted, he would have faced up to twenty-five years in prison. *See* NY C.L.S. Penal § 70.00 (2)(b). Instead, counsel was able to negotiate a plea under which the petitioner would receive no more than eight years' imprisonment and could receive as little as seven years' imprisonment. (P. at 8-9.) Given the evidence regarding the crime, and the highly favorable plea deal, petitioner has pointed to nothing in the record to suggest that counsel's advice regarding the guilty plea was deficient in any way.

11

Petitioner also argues that his trial counsel was ineffective because his counsel refused to go to trial because he did not receive adequate compensation (Pet. at 5.) This conclusory claim has no evidentiary support. At no time during the plea hearing did petitioner inform the trial court that his counsel refused to go to trial because of a lack of compensation. Critically, petitioner, under oath, stated during the plea hearing that he was "satisfied with the services of [his] lawyer." (P. at 4.); *see Hayes v. Tracy*, No. 03CV5237(SLT), 2005 WL 486912 at \*6 (finding that petitioner's statements, under oath, that he was satisfied with representation undermined his ineffective assistance claims). Further, petitioner stated no one "ha[d] threatened or forced [him] or pressured [him] to plead guilty against [his] will" and neither the court nor his lawyer "said anything to [him] to have [him] plead guilty against [his] will[.]" (P. at 9-10.) Moreover, the Court notes that petitioner failed to raise this claim in any of his many post-judgment motions; rather, it appears for the first time in this petition. In sum, petitioner's claim fails under the *Strickland*'s first prong in that he has not shown the requisite deficiency in trial counsel.

Petitioner's failure to show deficient performance disposes of his ineffective assistance claim. However, under the second prong of *Strickland*, petitioner also has failed to meet his burden. In other words, even if petitioner could establish that counsel erred, the Court also finds that any alleged deficiencies in representation did not result in prejudice to petitioner's case.

A review of the record reveals that the evidence against petitioner was extremely strong. Detective Edward Rogan of the Fifth Squad, Nassau County Police testified on September 10, 2010 that during an interview with Matos, she told him "a struggle . . . ensued within the car" and both Matos and the victim "got out of the car, and it was then that Miss Matos realized that her friend had been cut and was bleeding." (H. at 8.) Matos told Detective Rogan petitioner's name and, upon review of the photographic array, immediately identified the petitioner, stating, "[t]hat's the person that was in the back seat of the car with us." (*Id*. at 9-12.) Matos told Detective Rogan that "[s]he believed that [petitioner] was the one that had cut her friend." (*Id*. at 12.) After speaking with the victim, Detective Rogan testified that her story was similar to Matos's version of events, and the victim indicated that petitioner was her attacker. (*Id*. at 19-20.) Petitioner spoke to Detective Rogan on the telephone and mentioned that Santelli, the victim, had a cut on her hand and her thigh. (*Id*. at 18.)

Given the advantageous nature of the plea and the evidence regarding the case, as well as the weakness of petitioner's purported defense, the Court is unpersuaded that petitioner would have gone to trial absent these alleged errors. *See Hayes*, 2005 WL 486912, at \*6 (E.D.N.Y. Jan. 11, 2005) (There was no "reasonable probability that Petitioner would not have taken the plea agreement . . . ." ). In short, based upon the record, petitioner has failed to demonstrate with "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

In sum, petitioner is unable to satisfy either of *Strickland*'s prongs, and as such, his ineffective assistance of counsel claims are without merit. Accordingly, petitioner's request for habeas relief on these grounds is denied.

2. Competency to Take a Plea

Petitioner additionally claims that his guilty plea was not knowing, voluntary or intelligent because he was not competent to

take a plea. (Pet. at 6.) As set forth below, the Court concludes that this claim is without merit.

a. Standard

As a threshold matter, to the extent petitioner's claims do not relate to the validity of his guilty plea, but are attacks on antecedent constitutional violations, federal habeas relief is precluded. A petitioner who pleads guilty forfeits the right to argue issues collateral to the guilty plea. "State law treats a guilty plea as 'a break in the chain of events [that] preceded it in the criminal process.'" *Haring v. Prosise*, 462 U.S. 306, 321 (1983) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). Accordingly, a guilty plea "conclusively resolves the question of factual guilt supporting the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue." *United States v. Gregg*, 463 F.3d 160, 164 (2d Cir. 2006). Once a defendant has admitted guilt, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett*, 411 U.S. at 267. As such, "'[t]he only proper focus of a federal habeas inquiry in such a situation is the voluntary and intelligent character of the guilty plea.'" *Amparo v. Henderson*, No. CV-86-4310, 1989 WL 126831, at *2 (E.D.N.Y. Oct. 18, 1989) (quoting *Isaraphanich v. United States*, 632 F. Supp. 1531, 1533 (S.D.N.Y. 1986)).

In evaluating the validity of a guilty plea, the well-established standard is for the court to look at "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill*, 474 U.S. at 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Where a defendant is represented by counsel at the plea, and enters the plea upon the advice of counsel, the voluntariness of the plea depends upon whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Id.* (citations omitted.) As discussed *supra*, the Court determines that trial counsel's advice was well within the range of competence demanded by attorneys in criminal cases. Furthermore, the Court, after examining the circumstances of petitioner's guilty plea, concludes that his plea was done knowingly, intelligently, and voluntarily.

The Supreme Court has held that, under the Due Process Clause of the United States Constitution, a trial court can only accept a guilty plea which is "done voluntarily, knowingly, and intelligently, with sufficient awareness of the relevant circumstances and likely consequences." *United States v. Adams*, 488 F.3d 492, 497 (2d Cir. 2006) (quoting *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005)). Normally, a guilty plea may not be collaterally attacked, since it constitutes an admission to all elements of the charged crime. *Salas v. United States*, 139 F.3d 322, 324 (2d Cir. 1998). However, a defendant may challenge a guilty plea on the grounds that it was not knowing and voluntary. *United States v. Simmons*, 164 F.3d 76, 79 (2d Cir. 1998). A conviction which is based upon an involuntary plea of guilty is inconsistent with due process of law and is subject to collateral attack by federal habeas corpus. *McMann v. Richardson*, 397 U.S. 759, 772 (1970).

"A plea is considered 'intelligent' if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way,' and it is considered 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally.'" *Manzullo v. People of New York*, No. 07 CV

13

744(SJF), 2010 WL 1292302, at *5 (E.D.N.Y. Mar. 29, 2010) (quoting *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988)) (internal quotations omitted). Indeed, a "'plea of guilty entered by one fully aware of the direct consequences' of the plea is voluntary in a constitutional sense 'unless induced by threats, misrepresentations, or perhaps by promises that are by their nature improper.'" *Morales v. United States*, No. 08 Civ. 3901, 2009 WL 3353064, at *5 (S.D.N.Y. Oct. 20, 2009) (quoting *Bousley v. United States*, 523 U.S. 614, 619 (1998) (internal quotations omitted.)).

b. Application

The petitioner argues that his guilty plea was not knowing, intelligent, or voluntary because he was not competent to take a plea due to two prior commitments to Mid-Hudson Psychiatric Facility under CPL Art. 730 during the pendency of his case. The Court rejects this argument on the merits.

The Court has reviewed the record of petitioner's guilty plea and finds that it reflects a knowing, intelligent and voluntary plea.

As a threshold matter, petitioner's very same argument was rejected by Nassau County Court on the merits in its January 19, 2017 decision on his January 6, 2017 Section 440 motion. *People v. Raymond*, Ind. No. 383N-2010 (Cnty. Ct., Nassau Cnty., Jan. 19, 2017) (ECF No. 7-25.) "Thus, because the [Nassau] County Court's decision was an adjudication on the merits," *see* 28 U.S.C. § 2254(d), it is entitled to the deferential standard of review under AEDPA. *See e.g., Dolphy*, 522 F.3d at 238 ("When the state court has adjudicated the merits of the petitioner's claim, we apply the deferential standard of review established by [AEDPA]…").

In any event, upon reviewing petitioner's plea allocution, the Court finds nothing to support his assertion that his plea was not knowing, intelligent, and voluntary. Just one week before his plea, petitioner was deemed competent. (ECF No. 7-25.) Petitioner was fully advised at the time of his plea of the nature of the charges and the effect of a guilty plea. At the outset of the plea proceedings, the court advised petitioner that he should speak with his attorney if there was anything that he did not understand and that the court would also answer any questions that petitioner might have. (P. at 4.) Petitioner specifically informed the court that he had time to speak with his attorney about his case and consequences of a guilty plea, while confirming that he was satisfied with the manner of his attorney's representation. (*Id.*) Petitioner denied any coercion, or that any promises had been made to him other than those stated in open court. (*Id.* at 9-10.) He stated that he was entering the plea of his own free will. (*Id.* at 10.) Petitioner indicated that he understood the rights he was giving up – including his right to appeal. (*Id.* at 6-8.) The Court has read the plea transcript in its entirety and there is no indication that petitioner was confused or incompetent. In fact, petitioner was responsive to the court's questions and answered all questions in a coherent manner.

In sum, having carefully reviewed the record, there is no basis to conclude that the state court's decision regarding the validity of the guilty plea was contrary to, or involved an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the record. Accordingly, this claim does not warrant habeas relief in this case.

3. Actual Innocence

Notwithstanding that the Court has determined that petitioner has not exhausted his claim of actual innocence, the Court nonetheless proceeds to analyze its merits. Petitioner argues in a letter to the Court dated

December 15, 2017, that he is actually innocent, stating "I did not produce such laceration or inten[d] for such," and "I did not cause laceration from [Santelli's] ear to her cheeks or lips and no bodily cuts. I was not the last person with her at the time. I left her with Hannah Matos who became a witness in this case and she had a sharp object with her at that time." (ECF No. 6.)

a. Standard

In order to establish actual innocence, "petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Fountain v. United States*, 357 F.3d 250, 255 (2d Cir. 2004) (quoting *Bousley*, 523 U.S. at 623). Furthermore, in the context of a habeas petition following a guilty plea, "'actual innocence' means *factual innocence*, not mere legal insufficiency." *Id.* (quoting *Bousley*, 523 U.S. at 623) (emphasis added). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

b. Application

Here, petitioner does not provide "new reliable evidence" such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Schlup*, 513 U.S. at 324. Instead, he provides news articles and a Commonwealth of Pennsylvania opinion detailing a domestic violence incident involving an individual named Matos whom he asserts is the same person who provided information leading to his arrest and prosecution. Assuming *arguendo* that this is the same person, the articles still do not provide the requisite credible evidence of actual innocence. As a threshold matter, the domestic violence incident involving Matos is alleged to have occurred years after her role as a witness in petitioner's arrest. Moreover, any evidence that Matos attacked her ex-boyfriend years after the events in this case does not suggest that petitioner was innocent of assaulting the victim in this case. To the extent petitioner believes that this alleged subsequent crime by Matos also generally undermines her credibility, any such credibility issues are not sufficient to support a claim of actual innocence, especially in light of petitioner's sworn acknowledgment at this guilty plea proceeding that he cut the victim's ear and side of her cheek. In short, these allegations regarding Matos do not support his conclusory assertion of actual innocence in light of the entire record in this case.[4] Accordingly, petitioner's actual innocence claim is without merit and does not support habeas relief.

IV. CONCLUSION

For the foregoing reasons, this Court finds that petitioner has demonstrated no basis for habeas relief under 28 U.S.C. § 2254. Accordingly, this petition for a writ of habeas corpus is denied in its entirety.

Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Court certifies pursuant to

---

[4] The Court also concludes that petitioner's conclusory claims of falsification of evidence in the grand jury and in his diagnosis of mental illness (as set forth in his October 15, 2018 letter) do not support any claim of actual innocence or undermine his guilty plea, and do not provide any basis for habeas relief in this particular case.

28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

JOSEPH F. BIANCO
United States District Judge

Dated: January 11, 2019
Central Islip, New York

\*\*\*

Petitioner is proceeding *pro se*. Respondent is represented by Tammy J. Smiley, Assistant District Attorney, Nassau County District Attorney's Office, 262 Old Country Road, Mineola, New York 11501.